UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                              )
                                    )
James Edward Whitley,               )   Case No. 10-10426C-7G
                                    )
        Debtor.                     )
                                    )

OPINION AND ORDER

This case came before the court on November 8, 2011, for hearing on an Amended Application for Order Allowing Examination Pursuant to Rule 2004 and Requiring Production of Documents ("Application") filed on behalf of Charles M. Ivey, III, the Trustee in this Chapter 7 case ("Trustee"), and the Objection to Trustee's Amended Application for Order Allowing Examination Pursuant to Rule 2004 and Requiring Production of Documents and Motion to Quash ("Objection and Motion to Quash") filed on behalf of First Citizens Bank & Trust Company ("First Citizens"). Charles M. Ivey, III and Edwin R. Gatton appeared on behalf of the Trustee and Benjamin E.F.B. Waller appeared on behalf of First Citizens. Having considered the Application, the Objection and Motion to Quash, the authorities cited by the parties in support of their respective positions and the arguments of counsel, the court makes the following findings and conclusions pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

The Trustee alleges in the Application that he is investigating allegations that prior to the commencement of this case, the Debtor was engaged in a Ponzi scheme in which he

defrauded investors from whom he obtained loans or investments by means of false representations that the funds would be invested in a manner that would result in high returns to the investors. While conducting the Ponzi scheme, the Debtor maintained a checking account at First Citizens for approximately one year. The Trustee alleges that during this period, funds that the Debtor obtained in the course of the Ponzi scheme were deposited into the checking account and checks were drawn on the account disbursing such funds to various payees, including investors as purported returns on their investments. The Trustee alleges that he believes that "because of the account activity of the Debtor, the bank's computer system which monitors accounts for unusual or suspicious activity would have identified Debtor's account(s) as an account which was experiencing unusual, suspicious and potentially illegal activity." In order to continue his investigation regarding the Debtor's activities, the Trustee asserts that he needs copies of the bank documents described in the Application. The Application describes the requested documents as follows:

> (a) All bank documents relative to the accounts of the Debtor that were generated in the ordinary course of business to include, but not be limited to, all computer generated reports wherein any account of the Debtor was identified as having suspicious and/or unusual, irregular or improper account activity.
>
> (b) All documents relating to any investigation or inquiry by the bank or its agents of any account of the Debtor.
>
> (c) All documents which would evidence any response to

the investigation and the findings, or observation, notes of any such investigation relative to account activity of the Debtor, including suspicious activity.

(d) All documents which would evidence any follow-up concerning suspicious activity to include any written explanations which the Debtor may have given to the bank regarding the Debtor's account activity (to include any business activity).

(e) Any documents furnished by the Debtor to the bank to support any statements made by the Debtor to explain his account activity, including suspicious activity.

(f) Any documents obtained by the bank from any source whatsoever relating to any investigation the bank may have made into the account activity of the Debtor, including suspicious activity.

(g) Any suspicious activity report or any other report that the bank made to any government agency concerning the accounts of the Debtor.

According to the Objection and Motion to Quash, the Application exceeds the scope of Rule 2004 and amounts to a fishing expedition seeking grounds to assert claims against First Citizens. This objection does not present a valid reason for limiting the documents sought by the Trustee. Under Rule 2004 the examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter that might affect the administration of the debtor's estate. . . ." This language provides Rule 2004 with a wide scope of examination. See generally 9 Collier on Bankruptcy ¶ 2004.02[1] (16th ed. rev. 2011)(scope of examination under Rule 2004 is "unfettered and broad"). In the present case, the type of information that would be revealed through the documents described in the Application

necessarily would include information about the manner in which the Debtor used his account at First Citizens, such as details about his deposits and withdrawals. The requested documents thus relate to the "acts and conduct" of the Debtor. The documents described in the Application also relate to matters "which may affect the administration of the estate" since such information may reveal claims that can be pursued by the Trustee. The scope of the trustee's examination under Rule 2004 extends to third parties who are subject to examination if they possess knowledge of the debtor's acts, conduct, property, or financial condition. <u>In re Dinubilo</u>, 177 B.R. 932, 940 (E.D. Cal. 1993). A Rule 2004 motion may require the production of documents relevant to the examinee's knowledge. <u>Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc.</u> (<u>In re Eagle-Picher Indus., Inc.</u>), 169 B.R. 130, 132-33 (Bankr. S.D. Ohio 1994). Characterizing the proposed examination under Rule 2004 as a "fishing expedition" as First Citizens has done is not a valid objection, given the breadth of the language of Rule 2004. To the contrary, Rule 2004 examination has long been considered a lawful "fishing expedition." <u>In re Bennett Funding Group Inc.</u>, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); <u>see also Drexel Burnham</u>, 123 B.R. 702, 707-12 (Bankr. S.D.N.Y. 1991)(discussing history of Rule 2004 and its predecessors). Nor is it a valid objection that the trustee is attempting to use Rule 2004 in order to determine whether there are claims that can be

asserted by the trustee. A trustee may use Rule 2004 as a pre-discovery device to unearth claims and causes of action for the estate and reveal the breadth and nature of the estate. In re Drexel Burnham, 123 B.R. at 708. And the scope of inquiry under Rule 2004 is not limited to information related to possible claims that might be asserted pursuant to section 544 of the Bankruptcy Code, but also includes inquiries regarding possible preference claims to be asserted pursuant to section 547 or fraudulent conveyance claims that could be asserted pursuant to section 548. See Stonitsch v. St. Louis Banana and Tomato Co. (In re Isis Foods Inc.), 33 B.R. 45, 47 (Bankr. W.D. Mo. 1983). Rule 2004 helps "ensure, 'no viable cause of action is lost' and that 'all possible claims...have been identified.'" Robert J. Keach & Halliday Moncure, Rule 2004 as a Prelitigation Tool in a Post-Twombley/Iqbal World: Part I, 29 Am. Bankr. Inst. J. 28, 80 Oct. 2010 (citing In re Mirant Corp., 326 B.R. 354, 367 (Bankr. N.D. Tex. 2005)). Therefore, to the extent that the Objection is based upon the assertion that the Application goes beyond the scope of examination permitted under Rule 2004, the Objection shall be overruled.

The other ground of objection raised by First Citizen is that the Application, if allowed, "would require First Citizens to violate applicable federal law and regulations." The applicable law referred to by First Citizens is 31 U.S.C. § 5318(g)(2)(A)(i) and regulations related to section 5318(g) that have been adopted

- 5 -

by federal agencies such as the Federal Deposit Insurance Corporation and the Comptroller of the Currency.

The pertinent language in section 5318(g)(2)(A)(i) provides:

> If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a governmental agency—
> (I) the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported; and
> (ii) no officer or employee of the Federal Government or any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.

The regulations purporting to implement this statute include 12 C.F.R. § 353.3 which provides:

> Suspicious activity reports are confidential. Any bank subpoenaed or otherwise requested to disclose a suspicious activity report or the information contained in a suspicious activity report shall decline to produce the suspicious activity report or to provide any information that would disclose that a suspicious activity report has been prepared or filed citing this part, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and notify the appropriate FDIC regional Office (Division of Supervision and Consumer Protection (DSC)).

A similar regulation is found in 31 C.F.R. § 1020.320:

> (e) Confidentiality of SARs [Suspicious Activity Reports]. A SAR, and any information that would reveal the existence of a SAR, are confidential and shall not be disclosed except as authorized in this paragraph (e). For purposes of this paragraph (e) only, a SAR shall include any suspicious activity report filed with FinCEN

- 6 -

pursuant to any regulation in this chapter.

(1) Prohibition on disclosures by banks—(i) General Rule. No bank, and no director, officer, employee, or agent of any bank, shall disclose a SAR or any information that would reveal the existence of a SAR. Any bank, and any director, officer, employee, or agent of any bank that is subpoenaed or otherwise requested to disclose a SAR or any information that would reveal the existence of a SAR, shall decline to produce any SAR or such information, citing this section and 31 U.S.C. § 5318(g)(2)(A)(i), and shall notify FinCEN of any such request and the response thereto.

Read together, 31 U.S.C. § 5318(g)(2)(A)(i) and regulations such as those quoted above, "establish an absolute prohibition on financial institutions from disclosing to third parties information about the filing of a SAR." Bizcapital Bus. v. Comptroller of the Currency, 467 F.3d 871, 873 n.3 (5th Cir. 2006). The cases uniformly recognize that section 5318(g)(2)(A)(i) and the related regulations create a discovery and evidentiary privilege that may be invoked by a bank in order to avoid producing a SAR during the course of a civil proceeding. E.g., Gregory v. Bank One, 200 F.Supp.2d 1000, 1003 (S.D. Ind. 2002); Weil v. Long Island Sav. Bank, 195 F.Supp.2d 383, 389 (E.D.N.Y. 2001). It follows that the Objection and Motion to Quash should be sustained as to subparagraph (g) of the Application in which the Trustee seeks "[a]ny suspicious activity report or any other report that the Bank made to any government agency concerning the accounts of the Debtor." A response to this request by First Citizens would result in a disclosure of whether a SAR has been submitted and would

require the production of any such SAR and thus clearly falls within the privilege derived from 31 U.S.C. § 5318(g)(2)(A)(i).

A different conclusion, however, applies to the documents sought in subparagraphs (a) through (f) of the Application. As pointed out in Weil, the SAR privilege is "limited to the SAR and information contained therein; it does not apply to the supporting documentation." 195 F.Supp.2d at 389. A common theme in the cases in which a bank or other lending institution has invoked the SAR privilege has been to sustain the objection as to any SAR or any document that would reveal whether a SAR had been submitted, but to deny the objection as to other bank documents. As the court pointed out in Freedman & Gersten, LLP, 2010 WL 5139874*1 (D.N.J. Dec. 8, 2010), although a bank may undertake an internal investigation in anticipation of filing a SAR, it is also a standard business practice for banks to investigate suspicious activity as a necessary and appropriate measure to protect the bank's interests, and the internal bank reports or memorandum generated by the bank regarding such an investigation are not protected by SAR privilege. Id. at *4. In overruling the bank's objection, the court stated:

> [T]he court grants Plaintiff's request for any memoranda or documents drafted in response to the suspicious activity at issue in this case. However, Defendants shall not produce any SARs or previous drafts of SARs, need not indicate if and when a SAR was produced, and shall not state what documents and facts were or were not included in any SAR. Although BOA may

> have undertaken an internal investigation in anticipation of filing a SAR, it is also a standard business practice for banks to investigate suspicious activity and BOA does not cite any binding precedent on this Court which bars production of this relevant documentation.

Id. at *3-4.

The court in Gregory v. Bank One, 200 F.Supp.2d 1000 (S.D. Ind. 2002), reached a similar conclusion. While upholding the privilege for SARs, the court ruled that the privilege was limited to the SAR, stating that the rule [12 C.F.R. § 21.11(k)] "requires confidentiality only of SARs and their contents, not of other reports of suspicious activity . . . ." Id. at 1002. Nor do documents become privileged because they may prompt the filing of a SAR or because they support the filing of a SAR or are referred to in a SAR. In making this point, the court in Cotton v. Privatebank and Trust Co., 235 F.Supp.2d 809 (N.D. Ill. 2002), stated:

> Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR. For example, if a wire transfer of funds is described in a SAR as a suspicious activity, the wire transfer transaction remains subject to discovery. Therefore, the better approach prohibits disclosure of the SAR while making clear that the underlying transaction such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process.

Id. at 814.

The foregoing decisions represent a proper application of the

disclosure limitation embodied in section 5218(g)(2)(A)(i) and the related regulations that have been promulgated by the regulators. The letter and spirit of the limitation is served by shielding any SAR filed by a bank as well as any document that refers to a SAR having been filed or refers to information as being a part of a SAR or otherwise reveals the preparation or filing of a SAR. Other bank documents covered by a document request such as the one involved in this case are not shielded by the SAR privilege. Consistent with this approach, the Objection and Motion to Quash shall be overruled as to subparagraphs (a) through (f) of the Application except that First Citizens shall not be required to produce any SAR regarding the Debtor or his bank accounts that it has prepared for submission to any governmental agency nor any document that identifies any information as being a part of the contents of any such SAR or otherwise reveals that First Citizens has prepared such a SAR or any document that reveals that First Citizens has made a decision that a SAR regarding the Debtor or his bank accounts will not be filed.

Now, therefore, it is ORDERED, ADJUDGED AND DECREED as follows:

(1) The Objection and Motion to Quash is sustained as to the subparagraph (g) of the Application and First Citizens shall not be required to produce the documents described in subparagraph (g);

(2) The Objection and Motion to Quash is overruled as to

subparagraphs (a) through (f) of the Application and First Citizens is ordered to produce within 30 days from the date of this order the documents described in subparagraphs (a) through (f) that are in the possession, custody or control of First Citizens except that First Citizens shall not be required to produce any SAR regarding the Debtor or his bank accounts that it has prepared for submission to any governmental agency nor any document that identifies any information as being a part of the contents of any such SAR or otherwise reveals that First Citizens has prepared such a SAR or any document that reveals that First Citizens has made a decision that a SAR regarding the Debtor or his bank accounts will not be filed.

This 13th day of December, 2011.

_/s/ William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

James E. Whitley
1901 Tiffany Place
Greensboro, NC 27408

Charles M. Ivey, III, Esq.
Edwin R. Gatton, Esq.
P.O. Box 3324
Greensboro, NC 27402-3324

Benjamin E.F.B. Waller, Esq.
P.O. Box 8088
Greenville, NC 27835-8088

Michael D. West, Bankruptcy Administrator